UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEREDITH R. BROWN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION, et al., <br><br> Defendants. | Case No. 15-cv-01181-JD <br><br> **ORDER DENYING MOTION TO DISMISS** <br> Re: Dkt. No. 26 |

Plaintiffs submitted Freedom of Information Act ("FOIA") requests to defendants United States Customs and Border Protection and Department of Homeland Security (together, "CBP") that have gone unanswered far beyond the deadline Congress mandated. They allege a single claim in this putative class action: CBP has violated FOIA by engaging in a pattern and practice of failing to respond to FOIA requests within the statutory timeline. Dkt. No. 22. Defendants move to dismiss the complaint for failure to state a claim and for lack of standing. Dkt. No. 26. The Court denies the motion.

## BACKGROUND

As alleged in the complaint, CBP is responsible for generating and maintaining records about individuals seeking entry into the United States. First Amended Complaint, Dkt. No. 22 at ¶¶ 30, 43-46. It has the authority to admit or exclude individuals, parole noncitizens into the US, and issue expedited removal orders or permit them to withdraw applications for admission. *Id.* at ¶ 30. CBP's records are critical to noncitizens and their attorneys in evaluating immigration options and the possibility of remaining legally in the United States. *Id.* at ¶¶ 7, 43-46. The records are often the only evidence noncitizens have to show that they entered this country legally and may be eligible for lawful residency status or other immigration relief. *Id.* at ¶¶ 43-46. As

1   plaintiffs allege:

> to adjust to lawful permanent resident status, a noncitizen must document that he or she was "inspected and admitted or paroled" into the United States. 8 U.S.C. § 1255(a). At all U.S. ports of entry, CBP is the agency responsible for determining who is to be admitted or paroled into the United States. CBP maintains records of many of the admission and parole decisions it makes with respect to noncitizens. In many adjustment of status cases, these records are the only evidence that the applicant can produce to demonstrate that he or she was admitted or paroled and therefore eligible for lawful permanent resident status.

*Id.* at ¶ 43. Consequently, CBP records are often dispositive evidence in immigration cases, and delays in getting the records leave noncitizens and their lawyers "in legal limbo" that inflicts substantial hardship and distress. *Id*. at ¶ 7.

Plaintiffs are five immigration attorneys who regularly file FOIA requests on behalf of their clients, and thirteen noncitizens who have filed FOIA requests as part of their efforts to remain legally in the United States. *Id*. at ¶¶ 47 *et seq*. They allege that CBP has failed to answer the requests in a timely manner and that some of them have waited for one year or more without a response. *See, e.g., id.* at ¶¶ 49, 55, 61, 64, 66, 68. CBP does not seriously dispute that it has failed to respond to plaintiffs' FOIA requests within the statutory timelines. *See, e.g.*, Dkt. No. 29 at 2 n.1. Plaintiffs also allege that CBP's FOIA backlog -- the number of requests that have gone unanswered past the statutory deadline -- has swelled over the last few years and will require almost 10 years to zero out at the current pace. *Id*. at ¶¶ 33-38. Plaintiffs seek to represent a class of "[a]ll individuals who have filed FOIA requests with CBP which have been pending for more than 20 business days, and all individuals who will file FOIA requests with CBP" and experience similar delay. *Id.* at ¶ 89. The single claim is for a pattern and practice of violating FOIA's response timeline. *Id.* at ¶¶ 98-102.

## DISCUSSION

**I.      STANDARDS**

A complaint may survive a Rule 12(b)(6) motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). But the Court need not "'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). CBP's facial attack on the complaint under 12(b)(1) is evaluated using the same standards. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

## II. THE FOIA CLAIM

The main thrust of CBP's motion to dismiss is that violation of the FOIA response deadline is not a cognizable claim. Dkt. No. 26 at 3-8. This argument flies in the face of FOIA's plain meaning and several cases finding that unexcused delay is a perfectly valid claim.

The statutory setting is straightforward. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). To that end, Congress mandated that an agency receiving a FOIA request has 20 business days to make a "determination" about whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). The agency can extend that 20-day timeline by 10 days to 30 business days if "unusual circumstances" warrant additional time. *Id*. § 552(a)(6)(B)(i). Unusual circumstances involve complications such as the need to search for documents in multiple facilities, "a voluminous amount of separate and distinct records" for a single request, or the need to consult with another agency. *Id.* § 552(a)(6)(B)(iii). "If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies." *Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 185 (D.C. Cir. 2013) (hereinafter "*CREW*").

Once a lawsuit is filed, "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19-20 (1974)); *see also* 5 U.S.C. § 552(a)(4)(B) (district courts authorized to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"). An agency may seek additional time from the court to respond to a request if it demonstrates "exceptional circumstances," which are different from the "unusual circumstances" defined in the statute. *CREW*, 711 F.3d at 185; *see also* 5 U.S.C. § 552(a)(6)(C)(i). But as FOIA states, "'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

The government says that the case should be dismissed because an agency's failure to meet the response deadline is not an actionable violation of FOIA. Dkt. No. 26 at 4. That argument is wholly at odds with the statute and cases construing it. FOIA's intended purpose is to assure timely public access to governmental information and records. As Congress stated, "'[i]nformation is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial.'" *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998) (quoting H. Rep. No. 876, 93d Cong., 2d Sess. (1974) (discussing "the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits")). The denial of access to government records in a timely fashion is precisely the harm FOIA is intended to prevent.

Consequently, courts have repeatedly found that an agency's failure to respond to a FOIA request within the statutory time limits violates FOIA and allows the aggrieved party to sue. *See, e.g., Payne*, 837 F.2d at 494 ("[W]e agree with the holding of the Ninth Circuit in *Long*" that "'unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.'") (quoting *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982)); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, Nos. 14–4365 SC and 14–1130 SC, 2015 WL 4452136, at *7 (N.D. Cal. July 20, 2015) ("'an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA'") (quoting *Gilmore*, 33 F. Supp. 2d at 1187); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV. S-

1   06-2845 LKK/JFM, 2008 WL 2523819, at *5 (E.D. Cal. June 20, 2008) (same). While these

2   holdings arise specifically under FOIA, they reflect the general principle that a person suffers an

3   injury redressable in court when denied information that must, pursuant to a statute, be disclosed.

4   *See Akebia Therapeutics Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1111 (9th Cir. 2015) (citing *Fed.*

5   *Elections Comm'n v. Akins*, 524 U.S. 11, 21 (1998)).

6         CBP's response to these dispositive holdings could not be less persuasive. The

7   government grudgingly acknowledges that "[s]ome Northern District of California decisions have

8   recognized claims for delay in responding to FOIA requests" -- which of course overlooks the

9   decisions outside this District that reach the same conclusion -- but urges the Court to discount

10  them because they pre-date the District of Columbia Circuit opinion in *CREW*. Dkt. No. 26 at 6

11  n.6; *see also id*. at 5-7. In the government's view, *CREW* undercuts these cases because it holds

12  that the failure to meet FOIA's deadlines has no legal consequence other than "an agency's

13  forfeiture of the exhaustion of administrative remedies defense." *Id*. at 6 n.6.

14        This argument is tantamount to a willful misreading of *CREW*. The case says nothing at

15  all about the vitality of a FOIA claim based on a violation of the response deadline. The sole

16  "question presented" in *CREW* "concerns when a FOIA requester must exhaust administrative

17  appeal remedies before filing suit." 711 F.3d at 184. *CREW* held that when an agency fails to

18  respond to a FOIA request within the statutory timeline, it cannot invoke an administrative

19  exhaustion argument to keep cases out of court. *Id*. at 189-90; *see also Our Children's Earth*

20  *Found. v. Nat'l Marine Fisheries Serv.*, No. 14–1130 SC, 2015 WL 1458156, at *9 (N.D. Cal.

21  Mar. 30, 2015) (*CREW* addresses only the question of when a FOIA requester can sue). This

22  holding is not remotely germane to the government's argument here that plaintiffs cannot plead a

23  FOIA violation based on delay. CBP concedes that exhaustion is not an issue in this case -- it

24  makes no suggestion that the plaintiffs were required to seek administrative relief before filing

25  suit. *See, e.g.*, Dkt. No. 26 at 8 (suggesting "individual" lawsuits as an "adequate remedy" for the

26  plaintiffs). The lack of any argument about exhaustion severs any possible connection to *CREW*.

27  If anything, the tea leaves the government strains to read in *CREW* suggest that an untimely

28  response is a breach of FOIA's requirements. *See* 711 F.3d at 186 (noting FOIA "requires" a

5

response "within the relevant time period").

CBP attacks the complaint on a few ancillary grounds that are equally misdirected. For example, in a variation on the theme that FOIA does not allow suit over inaction, CBP contends that a FOIA claim may be predicated only on the "withholding of documents." *See, e.g.*, Dkt. No. 26 at 4. This argument is poorly taken. It founders on the case law described above that permits a claim based on delay, and requires an interpretation of "withholding" that makes little sense. CBP appears to believe that an actionable "withholding" occurs only when an agency locates documents and refuses to produce them. But it points to nothing in the statute or a decision that supports such a restrictive definition, and simply disregards the reality that failing to respond to a FOIA request is as much a withholding as intentionally locking away responsive information. *See, e.g., Gilmore*, 33 F. Supp. 2d at 1186-87.

CBP also contends that plaintiffs cannot sue on a pattern and practice of FOIA delays. Relying mainly on the District of Columbia Circuit opinion in *Payne*, CBP says that a pattern and practice claim requires specific allegations of future harm and that a plaintiff has standing to bring that claim only when actual or imminent future harm is alleged. Dkt. No. 26 at 8-12.

Once again, CBP's position is bereft of support. It does not cite a single case holding that specific allegations of futurity are essential to a pattern and practice claim or standing under FOIA. To the contrary, several cases have allowed pattern and practice claims for unreasonable delay -- and recognized a plaintiff's standing to bring them -- "even where the plaintiff's FOIA request had already been resolved." *Gilmore*, 33 F. Supp. 2d at 1186 (and cases cited therein). In *Payne* itself, the case on which CBP hangs its hat, the court sustained a claim for undue delay despite the fact that the agency had released the specific documents that prompted the lawsuit. *Payne*, 837 F.2d at 491. And even if allegations of future harm were required, plaintiffs have stated enough facts to infer it here. Plaintiffs include several immigration attorneys, some of whom have practiced for decades, who "regularly file[]" FOIA requests on behalf of their clients. *See* Dkt. No. 22 at ¶¶ 48, 51, 54, 57, 60. It is more than plausible to infer that they will continue to make regular FOIA requests for the CBP documents that are critical for their work, and continue to experience improper delays.

As a final challenge, CBP contends that the case should be dismissed because plaintiffs do not identify a "discrete policy or practice" behind the delayed responses. *See* Dkt. No. 26 at 12-15. This argument is also ill considered. None of the cases CBP cites require that a plaintiff name a specific policy at the pleading stage to maintain a FOIA "pattern or practice" claim. To the contrary, the District of Columbia Circuit has indicated that any agency's practice of delayed disclosure may be challenged when it is "informal, rather than articulated in regulations or an official statement of policy." *Payne,* 837 F.2d at 491. CBP's argument also misconstrues the pleading standards plaintiffs need to meet. Rule 8 requires only that the complaint provide "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It does not require a detailed recitation of policy chapter and verse to survive a Rule 12(b)(6) challenge. The complaint here describes a longstanding and pervasive practice of unreasonable delay in CBP's response to FOIA requests. That amply satisfies Rule 8.

## CONCLUSION

Plaintiffs have adequately alleged a FOIA violation. Defendants should file an answer to the complaint within **10 days** of this order.

**IT IS SO ORDERED.**

Dated: September 17, 2015

_____
JAMES DONATO
United States District Judge